**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROSA MARIA REYES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:19-cv-02643-PX |
| MANCHESTER GARDENS | * | |
| CONDOMINIUM, *et. al.*, | * | |
| Defendants. | | |

*** 

## <u>MEMORANDUM OPINION</u>

Pending in this fair debt collection case are Defendants' motions to dismiss and to strike the First and Second Amended Complaint, and Plaintiff's motion to file supplemental briefing. Each motion is fully briefed, and the Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court denies as moot the motions to dismiss the Amended Complaint filed by Defendant Linowes and Blocher LLP ("L&B") (ECF No. 3), and Defendant Lerch Early & Brewer Chartered ("LEB") (ECF No. 12); grants in part and denies in part the motion to dismiss the Second Amended Complaint filed by L&B (ECF No. 20); denies the motion to dismiss the Second Amended Complaint filed by Defendant Manchester Gardens Condominium ("Manchester") (ECF No. 22); denies the motion to strike the Second Amended Complaint filed by LEB (ECF No. 24); denies in part and grants in part the motion to dismiss the Second Amended Complaint filed by LEB (ECF No. 26); denies the motion to strike filed by L&B (ECF No. 29); denies the motion to strike the Amended Complaint filed by EJF Real Estate Services, Inc. ("EJF") (ECF No. 41); denies in part and grants in part the motion to dismiss the Second Amended Complaint filed by EJF (ECF No. 42); grants the motion to withdraw as Manchester's attorney (ECF No. 43); and denies Plaintiff's motion for leave to file supplemental

briefing (ECF No. 51).[1]

## I.      Background[2]

Since 2013, Plaintiff Rosa Maria Reyes has been engaged in a heated dispute with her condominium association, Manchester Gardens, regarding the nonpayment of her homeowner association ("HOA") fees.  ECF No. 16 ¶ 23; ECF No. 16-3 at 7.  Although Reyes is required to pay HOA fees under Manchester's Declaration and by-laws, she claims that since 2016, Manchester has ignored her repeated requests to provide her with accounting statements showing the HOA fees and other charges owed.  ECF No. 26-3; ECF No. 16 ¶¶ 22-23.

On March 4, 2019, Manchester Gardens' new property management company, EJF, notified Reyes in writing that she was delinquent on her HOA fees and that she owed $22,525.  ECF No. 42-3.  EJF urged Reyes to pay the full account balance.  *Id.*  Reyes, in response, enclosed a check for $320 for her March 2019 payment, and argued that Manchester continuously failed to provide her with "regular notices and statements."  ECF No. 16 ¶ 28.  She also requested that EJF provide her with a complete accounting of all outstanding fees purportedly owed.  *Id.*  According to Reyes, EJF never responded to this request, but she nonetheless started paying her monthly HOA fees to Manchester through EJF.  *Id.* ¶¶ 29-30.

On June 10, 2019, Reyes received a written notice of intent to lien ("NOIL) from Steven Dunn, an attorney at L&B, to recover unpaid HOA fees owed to Manchester.  *Id.* ¶ 31.  L&B included an accounting statement, which showed that from July 2016 to June 2019 Reyes had accrued a total balance of $13,456.83 in the form of unpaid HOA fees, late fees, process server

---

[1] Additional briefing is unnecessary where the Court has independently reviewed and taken into consideration the cases Reyes cited in her motion.  Denying the motion (ECF No. 51) visits no prejudice on Reyes.

[2] The Court accepts the facts pleaded in the Second Amended Complaint as true and construes them most favorably to Plaintiff.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Also pending are Defendants' motions to dismiss the First Amended Complaint (ECF Nos. 3 & 12), which are denied as moot.

fees, interest, and attorney's fees.  ECF No. 16-1 at 3.  The NOIL stated that the total account

balance of $13,456.83 would either be "subject to a lien/suit if initiated."  *Id.*  L&B further

advised that "unless the delinquency in the amount of $13,456.83 is paid within 30 days after the

date this notice has been served . . . the Association intends to record a Statement of Lien."  *Id.* at

2.  L&B would only accept full payment on behalf of Manchester and warned Reyes that

"collection efforts will continue until full payment is made."  *Id.*  L&B then instructed Reyes to

make checks payable to L&B and to address payment to Vanessa Phillips, a legal assistant at

L&B.  *Id.* at 4.  In conclusion, L&B encouraged Reyes to contact Ms. Phillips with questions and

provided her contact information.  *Id.*  Reyes does not specify whether she ever contacted or

made payments through L&B.

On June 22, 2019, Reyes received a second NOIL regarding her HOA fees, this time

from LEB.  ECF No. 16 ¶ 33; ECF No. 16-3.  LEB stated in the NOIL that the total account

balance was $15,151.59, of which $8,904 was subject to a lien.  ECF No. 16-3 at 3.  LEB

advised Reyes that if she failed to pay the $8,904 within thirty days, LEB would file a statement

of lien against her property in the Montgomery County land records.  *Id.*  LEB instructed Reyes

to make checks or money orders payable to Manchester.  *Id.*

After receiving these notices, Reyes filed suit against the named defendants on June 26,

2019, in the Montgomery County Circuit Court.  ECF No. 1-1.  Reyes next amended her

complaint while the case was still pending in circuit court.  ECF No. 1-9.  On September 11,

2019, with the consent of the other defendants, LEB removed this action pursuant to 28 U.S.C. §

1446(b)(2)(A).  ECF No. 1.  Reyes then filed a Second Amended Complaint on October 2, 2019.

ECF No. 16.

In the Second Amended Complaint, Plaintiff alleges not only that Manchester lacks

"probable cause" to file a statement of lien against her property, but also that the other named defendants engaged in "unfair and deceptive" debt collection practices in violation of state and federal law. *Id.* As a result, Plaintiff brings a number of claims both individually and on behalf of *seven putative classes*.

The Second Amended Complaint is, charitably put, a tangle. Plaintiff incorporates an array of legal theories and factual averments into single counts, which require the Court to untie the gordion knot. To do so, the Court focuses on the claims as applied to each defendant, addressing each theory of relief offered by Reyes that may support one or more claims. After resolving Plaintiff's individual claims, the Court will consider the impact of its analysis on the putative class allegations.

## II.     Motions to Strike

As a threshold matter, the Court addresses Defendants' motion to strike the Second Amended Complaint. ECF Nos. 24, 29, 41. Defendants contend Reyes is not entitled as a matter of law to amend the complaint, since she already amended it once in state court. Fed. R. Civ. P. 15(a)(2); *see also Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002). The Second Amended Complaint is largely identical to the earlier complaint in all material respects. *Compare* ECF No. 8 (First Amended Complaint) with ECF No. 16 (Second Amended Complaint). Pursuant to Federal Rule of Civil Procedure 15, which states that the Court must "freely grant" amendment to permit full resolution of claims on the merits, the Court will permit amendment. *See* Fed. R. Civ. P. 15(a)(2); *see Labor v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."). The motions to strike are denied and the operative

complaint is the Second Amended Complaint.  ECF Nos. 24, 29, 41.

The Court next turns to the legal sufficiency of Plaintiffs' allegations.

## III.    Motions to Dismiss

### A.  Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555), nor do conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When ruling on a motion to dismiss, the Court may also consider materials attached to the complaint and to the motion to dismiss without transforming the motion into one for summary judgment.  *See* Fed. R. Civ. P. 10(c).  These materials may be considered as long as they are integral to the complaint and their authenticity is undisputed.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).  Thus, the Court need not accept factual allegations that are contradicted by these materials.  *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Fayetteville Inv'rs v.*

*Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (the court can credit exhibits attached to pleadings that contradict factual allegations).

### B.  Claims against EJF (Counts II, III, and IV)

Reyes, individually and on behalf of two putative classes, claims EJF violated the following debt collection laws: the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm'l Law §§ 13-101 *et seq*.; the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Comm'l Law §§ 14-201 *et seq*.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a *et. seq*.  Plaintiff also brings an unjust enrichment claim against EJF.  ECF No. 16 at 28.  EJF moves to dismiss the Second Amended Complaint due to insufficient service of process and for failure to state a claim.  ECF No. 42-1; *see* Fed. R. Civ. P. 12(b)(5) & (b)(6).

#### 1.  Insufficiency of service of process

Because EJF challenges the adequacy of service, Reyes bears the burden of establishing that service was valid under Rule 4 of the Federal Rules of Civil Procedure.  *See O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).  This Court may "construe Rule 4 liberally" when the service of process, even if technically deficient, gave actual notice to the defendant.  *Id.* (quoting *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)).  However, "plain requirements" for effecting service cannot be ignored.  *Id.* (quoting *Armco. Inc. v. Penrod-Slauffer Bldg. Systems, Inc*., 733 F.2d 1087, 1089 (4th Cir. 1984)).

Reyes claims to have served EJF on August 2, 2019, by hand-delivery to the Maryland State Department of Assessments and Taxation ("SDAT").  ECF No. 42-1 at 1.  It is unclear whether EJF learned of this action through this attempted service or through the other named defendants.  ECF No. 38-1 ¶ 11.  In either event, EJF asserts that Reyes was required under

Maryland law to try and serve its resident agent first, before serving SDAT.  *Id.* ¶ 3; ECF No. 42-1 at 4.

Rule 4(e) of the Federal Rules of Civil Procedures authorizes a plaintiff to effect service following the law of the state in which the district court sits.  Fed. R. Civ. P. 4(e).  Maryland Rule 2-124(d) instructs that service on a corporation is made by serving the resident agent, president, secretary, or treasurer.  Only when there is (1) no resident agent or (2) a "good-faith attempt to serve the resident agent, president, secretary, or treasurer has failed" is service then authorized on other corporate directors and officers.  *Id.*  Rule 2-124(o), meanwhile, specifies when service can be made by serving SDAT:

> Service may be made upon a corporation . . . by serving two copies of the summons, complaint, and all other papers filed with it . . . upon [SDAT] if (i) the entity has no resident agent; (ii) the resident agent is dead or is no longer at the address for service of process maintained with the State Department of Assessments and Taxation; or (iii) two good faith attempts on separate days to serve the resident agent have failed.

Thus, under these rules, the pecking order seems clear.  If the resident agent is alive and in place, a plaintiff must try, and fail twice, to serve a corporation's resident agent before it can effectuate service through SDAT.

Reyes admits she only tried to effectuate service on EJF through SDAT.  ECF No. 48 at 7.  Reyes, however, maintains she was not required under the Maryland rules to first try and effectuate service on EJF's resident agent.  *Id.* at 5-6.  EJF administratively forfeited its corporate registration in Maryland, and so according to Reyes, its power to appoint a resident agent was "null and void."  *Id.*

Reyes is mistaken.  It is true that traditionally when a corporation forfeited its charter, the powers granted to it by law were extinguished, "including the power to sue or be sued."  *Thomas*

7

*v. Rowhouses, Inc.*, 206 Md. App. 72, 80 (2012) (internal quotation marks omitted).  However, all jurisdictions today, including Maryland, have enacted "corporate survivor" statues, which allow forfeited corporations to continue to exist for limited purposes.  *Id.*  Maryland's corporate survivor statute, Md. Code. Ann., Corps. & Ass'ns § 3–515, treats a forfeited corporation in the process of "winding up" as "alive" for purposes of being sued to satisfy its debts and liabilities.  *Thomas*, 206 Md. App. at 81.  Accordingly, the Maryland Court of Special Appeals recently held that "service may be made in any method which would have been appropriate when the corporation was in existence." *Id.* at 85.  Like a non-dissolved corporation, service is "valid and proper" when served upon the registered agent of the forfeited or dissolved corporation or an officer authorized to receive service.  *Id.* at 83.  Similarly, when the resident agent "cannot be located according to SDAT records, alternative service on SDAT has been deemed proper." *Id.* at 86.

Reyes erred in not treating EJF as a non-dissolved corporation for purposes of effectuating service, even though EJF's resident agent was publicly available on SDAT's website.  ECF No. 42-1 at 5; ECF No. 42-2.  Service was therefore improper.  However, because EJF had actual notice of this litigation (ECF No. 38-1 ¶ 11), the Court will instead quash service and give Reyes an opportunity to effectuate proper service on EJF if it does not otherwise waive service in the interests of efficiency.

## 2.   Failure to state a claim for relief

Even if service is properly effectuated, and for the following reasons, all but one of the claims against EJF must be dismissed.

### a. MCPA, MCDCA, and FDCPA claims based on EJF's unlicensed status

Reyes first avers that EJF engaged in debt collection activities without the requisite license, in violation of the MCDCA, Md. Code Ann., Comm'l Law § 14-202(10) (engaging in collection activity without a license); the MCPA, Md. Code Ann., Comm'l Law § 13-301(14)(iii) (violating the MCDCA is a *per se* MCPA violation);[3] and the FDCPA, 15 U.S.C. § 1692e (threatening to take action that cannot be taken).  ECF No. 16 ¶¶ 69-72, 76.  EJF argues that it was not required to obtain a license under Maryland law, thereby also negating Reyes' claims reliant on this state law violation.  *See* ECF No. 42-1 at 6, 10.

Looking first at the state law claims, the Court finds plausible that EJF engaged in unlicensed collection activity in violation of the MCPA and MCDCA.  The Maryland Collection Agency Licensing Act ("MCALA") requires licensure whenever "do[ing] business as a collection agency in the State."  Md. Code Ann., Bus. Reg. § 7-301(a).  A "collection agency" includes a "person who engages directly or indirectly in the business of . . . collecting for, or soliciting from another, a consumer claim."  *Id.* § 7-101.  Failure to obtain a license, if one is required, is its own violation of the MCPA and the MCDCA.  *See* Md. Code. Ann., Comm'l Law § 14-202(10); Md. Code. Ann., Comm'l Law § 13-301(14)(iii); *Andrews & Lawrence Prof. Servs. v. Mills*, 467 Md. 126, 152 (2020) (failure to obtain a license under MCALA is both a violation of the MCPA and MCDCA); *LVNV Funding LLC v. Finch*, 463 Md. 586, 606 (2019); *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 527 (D. Md. 2013); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 729 (D. Md. 2011).

---

[3] All of Plaintiff's MCPA claims against EJF stem from the fact that any MCDCA violation is *per se* a violation of the MCPA.  *See* Md. Code. Ann., Comm'l Law § 13-301(14)(iii); ECF No. 16 ¶ 72.  The Court will therefore focus its analysis on whether Plaintiff has plausibly alleged an MCDCA violation and will assume that where an MCDCA claim is plausibly made, so too is the accompanying MCPA claim.

EJF disputes its designation as a collection agency.  Citing to *Young-Bey v. Southern Management Corp.*, No. TDC-18-2331, 2019 WL 1992905, at *3 (D. Md. May 6, 2019), EJF asserts it is a property management company and therefore not "in the business" of debt collection.  ECF No. 42-1 at 7.  At first blush, *Young-Bey* seems favorable to EJF.  There, the Court held that an owner-operated property management company was not a "debt collector." *Young-Bey*, 2019 WL 1992905, at *3.  However, in *Young-Bey*, the property management company was also the lessor, and the property's tenants were therefore required to pay rent *directly* to the property management defendant.  *Id.*  The Court concluded that because the property management company had been collecting debts on its own behalf, it was not a collection agency.  "Where [defendant] is a party to the lease contract and seeks to collect debts in the form of rent, those debts are owed directly to [defendant] as the lessor, not to a third party."  *Id.*

In contrast, EJF's letter states plainly that delinquent HOA fees were owed to Manchester, and EJF instructed Reyes to pay Manchester directly.  ECF No. 42-3.  From the face of the EJF letter, it was assisting in the debt collection of a third party and meets the definition of a "collection agency" under MCALA.[4]  *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 409 (D. Md. 2012) (finding property management company should have obtained debt collection license); *see also Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, 948 F. Supp. 2d 525, 531 (D. Md. 2013) (finding debt collection statutes generally do not apply to creditors "collecting debts in their own names").

---

[4] EJF further argues that Reyes was obligated under Maryland law to establish that its "primary purpose" was to collect debts.  ECF No. 42-1 at 7.  EJF cites no legal support for this assertion, and for good reason.  Under the plain language of MCALA, the license requirement does not seem to turn on whether the company's primary business is debt collection, but rather whether debt collection is a facet of the individual's business.  See Md. Code Ann., Bus. Reg. § 7-301(a).

Accordingly, Reyes has plausibly alleged violations of the MCPA and the MCDCA on the basis that EJF failed to obtain a license before serving as a collection agency for Manchester. Md. Code Ann., Bus. Reg. § 7-301(a).  This Court must therefore decide whether EJF's unlicensed collection activity plausibly shows an FDCPA violation.  On these facts, it does not.

Like its state law analogues, the FDPCA protects consumers from "abusive and deceptive practices by debt collectors."  *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  To establish a plausible FDCPA claim, Reyes must allege that: (1) EJF is a "debt collector"; (2) that Reyes was "the object of collection activity arising from consumer debt"; and that (3) "in connection with" her debt, EJF "engaged in debt collection activity prohibited by the FDCPA."  *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013).  The Court need not address whether the first two prongs are met, because Reyes fails to satisfy the third prong, that EJF engaged in prohibited debt collection activity.

The FDPCA expressly identifies prohibited debt collection activities.  Mere unlicensed collection is not among them.  *See* 15 U.S.C. § 1692e.  To be sure, unlicensed collection activity may arise in the context of FDCPA prohibitions on an agency threatening to "take any action that cannot legally be taken."  *Id.* § 1692e(5).  But the provision does not bar otherwise lawful collection activity undertaken without a license.  To fall within the FDCPA, the debt collector must also threaten to take action that cannot be taken—including legal action or filing a statement of lien—without a proper license.  *See Ademiluyi*, 929 F. Supp. 2d at 527 (citing *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 728–29 (D. Md. 2011) (threatening to take legal action, or actually taking legal action, violates the FDCPA); *Grant–Fletcher v. Brachfeld Law Group, PC*, WMN–11–2072, 2012 WL 2523094, at *6 (D. Md. June 28, 2012) (finding no FDCPA violation where debt collector's notice contained "no reference, either direct

or implicit, to suit, lawsuit, legal action, or litigation")).  Thus, the failure to obtain a license can contribute to, but cannot on its own establish, an FDCPA violation.  *See Ademiluyi*, 929 F. Supp. 2d at 527.

Viewing the single EJF letter to Reyes that is at the heart of her claim, EJF cannot be held liable under the FDCPA on this theory.  ECF No. 42-3.  The EJF letter makes no threats to take any action of any kind.  *See id.*; *Grant-Fletcher*, 2012 WL 2523094, at *6.  Rather, the letter notified Reyes of her delinquency and encouraged her to pay her outstanding balance to Manchester.  ECF No. 42-3.  The FDCPA claim must therefore be dismissed.  *See Fayetteville*, 936 F.2d at 1465 (the court can credit exhibits attached to pleadings that contradict factual allegations).

### b.  Additional MCDCA, MCPA, and FDCPA claims

With respect to Counts II and III, Reyes' remaining theories fail as a matter of law. Reyes first asserts that EJF's letter urged Reyes to pay debts that were time-barred under state law, in violation of the MCDCA, Md. Code Comm'l Law § 14-202(8) ("threaten[ing] to enforce a right with knowledge that the right does not exist"); the MCPA, Md. Code Ann., Comm'l Law § 13-301(14)(iii) (MCDCA violation is *per se* an MCPA violation); and the FDCPA, 15 U.S.C. § 1692e(5) (threatening to take action that cannot be taken).  ECF No. 16 ¶¶ 66, 84.  This liability theory arises from Maryland's two-year limitations period for filing a lien following a debtor's breach of contract or default.  Md. Code Ann., Real Prop. § 14-203(a)(1); *see also* Md. Code Ann., Cts. & Jud. Proc. §§ 5-1201(a),(f).  Creditors must notify the debtor of the defaulted payment within this time period if the creditors wish to pursue collection action in the future. Otherwise, threatening legal action having not provided timely notice is considered a violation of the FDPCA, 15 U.S.C. § 1692e(5) ("threat[ening] to take any action that cannot legally be

12

taken"), and potentially the MCDCA, Md. Code Comm'l Law § 14-202(8) ("threaten[ing] to enforce a right with *knowledge* that the right does not exist") (emphasis added).  That said, creditors are permitted to request that the debtor voluntarily pay a debt that has been on the books for more than two years.  *See Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 528 (D. Md. 2001).

This distinction is dispositive.  ECJ's letter, most favorably construed to Reyes, simply asks for repayment of delinquent fees.  ECF No. 42-3.  EJF provides the outstanding amount and then asks Reyes to "please pay the full balance."  *Id.*  Nothing in the letter, or in any surrounding averred facts, support Reyes' bald assertion that EJF "threatened" to take legal action.  Thus, this theory fails as a matter of law.

Reyes next asserts that EJF sought payment on behalf of Manchester for sums "not lawfully owed," including interest and late fees, as well as fees in anticipation of future breaches.  ECF No. 16 ¶¶ 68, 69c-d, 78.  This, according to Reyes, EJF violated the same provisions of the MCDCA, the MCPA, and the FDPCA—all of which prohibit a threat to take action that cannot be taken.  Md. Code Ann., Comm'l Law § 14-202(8); Md. Code Ann., Comm'l Law § 13-301(14)(iii); 15 U.S.C. § 1692e(5).

This theory of relief is also meritless. The Manchester by-laws, to which Reyes is indisputably bound, expressly authorize the imposition of late fees, attorney's fees, and interest when the owner falls behind in HOA fees.  ECF No. 20-3 at 16.  These contractual penalties are also lawful.  *See Monmouth Meadows Homeowners Ass'n Inc. v. Hamilton*, 416 Md. 325, 328 (2010).  Thus, the Court sees no basis for this theory of relief.  As for Reyes' bald assertion that

the charges are in anticipation of future delinquent payments, no complaint facts support her

contention.  Thus, Reyes cannot support her claims on this basis.[5]

In sum, Reyes has plausibly shown that EJF engaged in unlicensed collection activity in

violation of the MCPA, Md. Code. Ann., Comm'l Law § 13-301(14)(iii), and the MCDCA, Md.

Code Ann., Comm'l Law § 14-202(10).  ECF No. 42-3.  All other theories supporting her

FDCPA, MCDCA, and MCPA claims are dismissed.

### 3.   Unjust Enrichment Claim against EJF (Count IV)

In Count IV, Reyes alleges that because EJF profited from its unlicensed debt collection

activity, both the partial collection of outstanding debt and EJF's profit support a separate theory

of unjust enrichment.  ECF No. 16 ¶ 97.  "To recover under either theory, the plaintiff must

demonstrate that the defendant received a benefit which equity requires the defendant to

relinquish."  *Hobbs v. St. Martin*, 320 F. Supp. 3d 748, 752 (D. Md. 2018).  Specifically for the

unjust enrichment claim, Reyes must show that: (1) Reyes conferred a benefit on EJF; (2) that

EJF knew or appreciated the benefit; and (3) that EJF's "acceptance or retention of the benefit

under the circumstances is such that it would be inequitable to allow [it] to retain the benefit

without the paying of value in return."  *Benson v. State*, 389 Md. 615, 651 (2005).  Meanwhile,

an action for money received "lies whenever the defendant has obtained possession of money

which, in equity and good conscience, he ought not to be allowed to retain."  *Id.* at 652–53.

Plaintiff's factual allegations supporting these claims are muddled at best.  Reyes seems

to suggest the claim survives because she paid her HOA fees directly to EJF, and therefore EJF

---

[5] To the extent Reyes intends to allege additional violations of the FDCPA, MCDCA, or MCPA, *see* ECF No. 16 ¶¶ 73, 77, 85, the Court cannot discern a plausible theory or make out new facts that would support a separate basis for relief.  *See* Md. Code Ann., Comm'l Law §§ 14-202(1), (8), (9), (11); Md Code Ann., Comm'l Law § 13-301(14); 15 U.S.C. §§ 1692e-f; *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 765 (D. Md. 2012) (a claim under section 1692f of the FDCPA requires allegations that are "separate and distinct" from the allegations supporting the 1692e violations).

was the unlawful recipient of these payments.  ECF No. 16 ¶ 13 (alleging EJF acquired Reyes'

account while in default); *id.* ¶ 26 ("By its own admission in its correspondence to her, EJF

acquired the collection rights to Ms. Reyes' account with Manchester when it believed the

account to be delinquent or otherwise in default."); *id.* ¶ 29 ("Upon information and belief, EJF

has retained a portion of these payments, directly or indirectly, for its work as a collection

agency.").  However, the sole correspondence on which Reyes brings the claim—the EJF

letter—makes no provision for payment directly to EJF, but only to Manchester.  ECF No. 42-3.

On this point, Reyes contends only that EJF's letter is in "clear contrast" to "the Complaint."

ECF No. 48 at 17.  That may be.  But where, as here, documents *integral* to the sufficiency of the

complaint refute a plaintiff's bald assertions, the Court may credit the document and dismiss the

claim.  *See Fayetteville*, 936 F.2d at 1465; *Philips*, 572 F.3d at 180.  The letter makes clear that

EJF did not acquire the collection rights to Reyes' account, and that Reyes' financial obligation

remained with Manchester.  ECF No. 42-3.  Thus, EJF cannot be said to have been unjustly

enriched, as pleaded, because no facts support that the payments were made to EJF.  *See Benson*,

389 Md. at 651.

As to EJF's purported profits, the court fails to discern Reyes' legal theory of entitlement.

*See Revene v. Charles Cty. Com'rs*, 882 F.2d 870, 873 (4th Cir. 1989) (the court need not accept

unsupported legal allegations).  Even if EJF may be construed as a "collection agency" that did

not obtain proper licensure, this fact does not erase Manchester's rights to collect on the debt.

And, by extension, if EJF authored a "please pay" letter on Manchester's behalf, the content of

which was otherwise lawful, then EJF has not been improperly paid for that service.  *See*

*Ademiluyi*, 929 F. Supp. 2d at 535.  The unjust enrichment claim as to EJF is therefore dismissed.

### C.  Claims against L&B (Counts II and III)

The Court next turns to Plaintiff's claims against L&B for violations of the MCDCA (Count II) and the FDCPA (Count III).[6]   Plaintiff offers multiple theories of relief, often in support of both her MCDCA and FDCPA claims.  Each is assessed below.

### 1.   MCDCA and FDCPA claims based on Maryland's license requirement

Like her claims against EJF, Plaintiff alleges L&B engaged in unlicensed collection activity in violation of the MCDCA, Md. Code Ann., Comm'l Law § 14-202(10) (engaging in collection activity without a license), and the FDCPA, 15 U.S.C. § 1692e(5) (threatening to take action that cannot be taken).  *See* ECF No. 16 ¶ 63.  The Court has previously discussed the operative law regarding unlicensed collection activity.  *See* Md. Code Ann., Bus. Reg § 7-301; Md. Code Ann., Comm'l Law § 14-202(10); 15 U.S.C § 1692e(5); *Andrews,* 467 Md. at 151–52; *LVNV Funding*, 463 Md. at 606; *Grant-Fletcher*, 964 F. Supp. 2d at 527; *Bradshaw*, 765 F. Supp. 2d at 729–31.  On this point, L&B contends that it was exempt from MCALA's license requirement, citing to its exemption provision.  Md. Code Ann., Bus. Reg. § 7-102(b)(9).

Section 7-102(b)(9) of MCALA exempts attorneys from licensing requirements "*unless* the lawyer has an employee who: (i) is not a lawyer; *and* (ii) is engaged primarily to solicit debts for collection *or* primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency."  *Id.* (emphasis added).  In this way, MCALA does not give lawyers a "free pass."  *Andrews*, 467 Md. at 156.  "Where a law firm is undertaking the same activities as a collection agency through non-lawyer employees, the lawyer or law firm is treated no differently from a collection agency under MCALA."  *Id.* at 154.

---

[6] Reyes clarifies she is only bringing an MCDCA claim under the Count II heading against L&B, and not an MCPA claim.  *See* ECF No. 16 ¶ 62.

Plaintiff has not sufficiently pleaded that L&B was required to obtain a license under MCALA.  No facts support that an L&B was primarily engaged in soliciting debts or primarily contacting debtors to collect or adjust debts.  Md. Code Ann., Bus. Reg. § 7-102(b)(9).  The single fact on which the claim rests is that the L&B NOIL noted payments may be remitted to an L&B legal assistant, Vanessa Phillips, and to contact Ms. Phillips with any questions.  ECF No. 16-1 at 4.

Phillips' role, most broadly viewed, does not trigger licensure obligations for L&B.  *See Grant-Fletcher*, 964 F. Supp. 2d at 527 (receptionist's encouragement to plaintiff debtor to reach out with questions was insufficient to trigger license requirement).  Because the NOIL clearly shows Steven Dunn initiating contact with Reyes, providing the substantive information, and identifying Phillips only in the most ministerial of roles, the claim cannot survive challenge.  ECF No. 16-1 at 4.  Likewise, because Reyes has not plausibly shown L&B engaged in unlicensed collection activity in violation of the MCDCA, Md. Code Ann., Comm'l Law § 14-202(10), her parallel FDCPA claim also fails.

### 2. MCDCA and FDCPA claims based on L&B's representation that it would file a lien

Plaintiff next argues that L&B violated the MCDCA and the FDCPA by stating in the NOIL that failure to pay the outstanding debt, which included time-barred funds, would result in a lien filed on her property.  ECF No. 16 ¶¶ 66, 69h; *see* 15 U.S.C. § 1692e(5); Md. Code Ann., Comm'l Law, §§ 14-202(8), (11); *see also Grant-Fletcher*, 964 F. Supp. 2d at 521 (framing the inquiry as whether the "least sophisticated consumer" would find the creditor's language

"contradictory or inconsistent, so to leave him confused about his right to dispute the debt"). This theory survives challenge.[7]

L&B does not, and cannot, dispute, the applicable two-year limitations period for collection of the debt.[8]  Md. Code Ann., Real Prop. § 14-203(a)(1).  Nor does it argue, as EJF did, that it sought permissible voluntary repayment.  *See Jenkins v. Karlton*, 329 Md. 510, 531 (1993); *Wallace*, 168 F. Supp. 2d at 528.  Rather, L&B contends that, although mindful it could only file a lien based on the funds owed within the two-year limitations, L&B was simply informing Reyes that her total account balance of $13,456.83 would either be subject to a lien *or* a lawsuit if she did not pay it within 30 days.  ECF No. 20-2 at 9.

Accordingly, whether L&B threatened to file a statement of lien on the entirety of the debt, including the debt accrued outside the two-year limitations period, critically informs the viability of the claim.  Md. Code Ann., Real Prop. § 14-203(a)(1).  This is so because a creditor's threat to file a lien constitutes a "threat to take any action that cannot legally be taken," only if the debt is otherwise time-barred from collection efforts.  15 U.S.C. § 1692e(5); *see also* MCDCA, Md. Code Ann., Comm'l Law § 14-202(8) ("threaten[ing] to enforce a right with *knowledge* that the right does not exist") (emphasis added); § 14-202(11) (making an FDCPA violation a *per se* MCDCA violation).

---

[7] The Court is mindful that MCDCA and FDPCA claims can only be brought against debt collectors seeking to collect consumer debts.  *See* 15 U.S.C. § 1692e; Md. Code Ann., Md. Comm'l Law §§ 14-201(b), 14-202; *see also Ademiluyi*, 929 F. Supp. 2d at 524.  In its motion to dismiss, L&B does not dispute that it meets the definition of a debt collector or collector attempting to collect a "consumer debt" for purposes of the FDCPA and MCDCA (ECF No. 20-2), and so the Court will not address these factors.

[8] L&B contends that the applicable limitations period governing the claim is three years for a breach of contract action.  However, L&B's letter plausibly threatened to file a lien for all dues owed, thereby making the two-year limitations period relevant.  As for L&B's assertion that § 14-203(a)(1) is more accurately construed as a notice requirement (ECF No. 20-2 at 8), the Court follows state precedent that establishes this as a limitations period.  *See Club House, LLC v. Cushman*, No. 890, 2017 WL 2464430, at *3 (Md. Ct. Spec. App. June 7, 2017); *see also Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 679 (2018).  L&B offers no binding or persuasive authority suggesting otherwise.

According to the NOIL, L&B sought the collection of dues owed from June 2016 to June 2019.  ECF No. 1-9 at 41; ECF No. 16-1.  L&B sent its NOIL on June 6, 2019, and so at least some of the outstanding dues were time-barred.  *Id.*  In the first page of its letter, L&B provided the total account balance and then stated that unless Reyes paid the total amount within thirty days, L&B would pursue a lien.  *Id.*  Through the lens of the "least sophisticated debtor," *Ademiluyi*, 929 F. Supp. 2d at 527, L&B thus threatened to take action that it could not take: filing a lien if time-barred dues continued to go unpaid.  *See Wallace*, 168 F. Supp. 2d at 527 (stating the FDCPA "prohibit[s] a debt collector from threatening to sue on a debt that it knows to be barred by limitations").  Plaintiff has plausibly alleged violations of the MCDCA and the FDCPA based on this theory of relief.  15 U.S.C. § 1692e(5); Md. Code Ann., Comm'l Law §§ 14-202(8), (11).

### 3. Additional MCDCA and FDCPA claims against L&B

Reyes remaining theories are unavailing.  Reyes avers L&B threatened to file a lien in anticipation of "a future breach of contract."  ECF No. 16 ¶ 68.  Looking at the NOIL, this Court cannot make out where L&B allegedly charged Reyes in anticipation of future contractual breaches.  Meanwhile, the Complaint is devoid of additional facts to clarify, let alone support, this theory.  *See Hawkins v. Reg'l Mgmt., Inc.*, No. 2550, 2018 WL 480766, at *5 (Md. Ct. Spec. App. Jan. 19, 2018).  All state and federal claims based on this theory are rejected.

As for Reyes' contention that L&B's accounting statement attached to the NOIL "includes sums not authorized under Maryland law," the Court can only take this to mean the imposition of late fees, interest, process server fees, and attorney's fees, as shown on L&B's accounting statement.  ECF No. 16 ¶ 68; ECF No. 16-1.  These fees, however, are expressly

authorized by Manchester's by-laws, ECF No. 20-3 at 16, and are permitted under state law, *see Monmouth*, 416 Md. at 328-330.  Based on the facts as alleged, this theory is meritless.

Reyes also contends L&B violated the MCDCA and the FDCPA by informing her that she could challenge the lien within 30 days from the postmarked date of the NOIL, not thirty days from the date of *receipt*.  ECF No. 16 ¶ 31e.  This Court has already deemed this error a "de minimis" violation that does not warrant liability. *See Grant-Fletcher*, 964 F. Supp. 2d at 522.  This liability theory, too, is dismissed.

Reyes next alleges L&B failed to disclose in its NOIL that Manchester has no right to (1) bring an action while operating in violation of Chapter 10B-7(a)(2) of the Montgomery County Code or to (2) file a "false lien" in violation of state criminal laws.  ECF No. 16 ¶ 69g.  The Court fails to see what relevance the registration requirement for "common ownership communities" has on L&B's liability under the MDCPA and the FDCPA.  Without any legal authority to support Plaintiff's position, the Court rejects this claim.

Equally inscrutable is Reyes' assertion that L&B was required to disclose that state criminal laws prohibited it from filing "false liens." *Id.* ¶ 31k.  Plaintiff provides no factual support or legal authority for this argument.  It, too, fails as a matter of law.

In sum, Plaintiff's MCDCA and FDCPA claims may proceed on the theory that L&B threatened to take action prohibited by law when it informed Reyes that failure to pay the entirety of her unpaid balance, including debt outside the two-year limitations period, would result in L&B filing a property lien.  ECF No. 16-1 at 2; Md. Code Ann., Comm'l Law, §§ 14-202(8), (11); 15 U.S.C. § 1692e(5).  Otherwise, the entirety of Reyes' MCDCA and FDCPA claims against L&B are dismissed.[9]

---

[9] With little clarification, Reyes insists a number of MCDCA's subsections are applicable.  *See* ECF No. 16 ¶ 74.  The Court has already addressed the plausibility of claims brought under subsections 8, 10, and 11.  *See* Md.

### D.  Claims against LEB (Counts V and VI)

As for LEB, Reyes alleges similar theories of liability that are best treated separately.

### 1.  MCDCA and FDCPA claims based on LEB's representation that it would file a lien

Reyes asserts that LEB's stated intent to file a lien if she did not pay $8,904 violated the MCDCA and the FDCPA, because that amount included time-barred fees.  ECF No. 16 ¶¶ 33h; 104.  Assuming Plaintiff can support this factual allegation, she has asserted a cognizable legal theory.  *See* Md. Code Ann., Real Prop. § 14-203(a)(1); 15 U.S.C. § 1692e(5); Md. Code Ann., Comm'l Law §§ 14-202(8), (11); ECF No. 16 ¶ 104a.

The parties hotly contest whether the $8,904 included fees outside the two-year limitations window.  *Compare* ECF No. 16 ¶ 33h *with* ECF No. 26-1 at 9, 18.  This discrepancy is largely due to the parties' disagreement over whether to include part of the $3,840 charge from January 1, 2017, which was for "January-December Assessments."  ECF No. 16-3 at 5.  According to LEB's accounting, this assessment reflects twelve, monthly assessments in 2017 for $320 each, and so six of those monthly assessments (for the period of July 2017 to December 2017) should be included within its calculation.  ECF No. 26-1 at 18.  Reyes understandably does not include this assessment in her total, given that she was charged on January 1, 2017, well before July 2017.  ECF No. 16 ¶ 33h.  While the accounting statement is perplexing in certain respects, it plausibly shows that LEB could file a lien against Reyes' property for at most $7,175.

---

Code Ann., Comm'l Law §§ 14-202(8), (10)-(11).  Further, no plausible claim has been alleged with respect to subsection 9.  *See id.* § 14-202(9) (prohibiting a false or misleading "communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not").  Reyes also uses the same factual allegations to support her claims under 1692e and 1692f of the FDPCA, 15 U.S.C. §§ 1692e-f, without any discussion as to which "specific facts" support her 1692f claim.  *Stewart*, 859 F. Supp. 2d at 765.  To the extent Plaintiff intended to bring these claims, the Court finds that no facts render the claims plausible.

*Id.* [10]  Accordingly, Reyes has plausibly alleged MCDCA and FDCPA claims based on LEB's threat to file a statement of lien, which included time-barred dues.  *See* 15 U.S.C. § 1692e(5); Md. Code Ann., Comm'l Law §§ 14-202(8), (11).

### 2.  Additional MCDCA and FDCPA claims against LEB

Reyes' remaining theories of relief against LEB are implausible.  Reyes alleges that LEB's threatened lein was "false[] and deceptive[]" because it also claimed a "much larger sum" than actually owed was due.  ECF No. 16 ¶ 33b.  No facts support this claim.  *Cf.* Fed. R. Civ. P. 9(b); *Fessler v. Int'l Business Machines Corp.*, 959 F.3d 146, 155 (4th Cir. 2020) (fraud claims must be plead with particularity); ECF No. 16-3.  Put differently, even if the Court accepts as true LEB's accounting error which gives rise to Reyes' viable claims, this error does not amount to fraud or deception.

Plaintiff next takes issue with LEB's simultaneous demand for payment of HOA fees that were legal and time barred.  This demand, according to Plaintiff, was a deceptive debt collection practice.  ECF No. 16 ¶ 104c.  However, LEB may indisputably seek voluntary payment of time-barred dues.  *See Jenkins*, 329 Md. at 531; *Wallace*, 168 F. Supp. 2d at 528 (finding where "a limitations statute does not extinguish the debt but only provides a defense against its collection, a debt collector may seek voluntary payment of a time-barred debt"); *see also In re Jaley*, 600 B.R. 511, 517 (Bankr. Md. 2019).  Further LEB plainly distinguished between those fees subject to the lien and those that were not.  ECF No. 16-3.  Because LEB's statements were neither false

---

[10] Because the time at which fees became owed is governed by the contract between Manchester and Reyes, LEB's accounting statement does not tell the whole story as to when the fees became delinquent.  At this stage, the Court cannot credit LEB's argument without further factual development.  Similarly, the Court will not dive into Reyes' fact-intensive insistence that the lien is less than $7,175, because LEB failed to credit certain payments as "restrictive endorsements."  ECF No. 16 ¶ 33h; ECF No. 26-1 at 19-20.  This claim is incapable of resolution without further factual development.

nor misleading in this regard, there is no basis upon which to conclude that LEB's request ran afoul of the MCDCA and FDCPA.

As for the remaining allegations of fraud or deception, Reyes' efforts to flyspeck LEB's NOIL are unavailing. *See Ademiluyi*, 929 F. Supp. 2d at 530; ECF No. 16 ¶¶ 33e, 33j, 33k; ECF No. 16-3 (NOIL stating only payment in full could "resolve this situation"; "accelerated amount"; "amount subject to lien" versus "amount subject to current lien"). Nor can Reyes' attempt to bootstrap her otherwise unsuccessful claims into an action somehow sounding in fraud. *See, e.g.* ECF No. 16 ¶¶ 41, 49, 61 (claims of mere failure to comply with county licensure constitutes deceptive debt practice). Plaintiff's claims against LEB, other than the narrow dispute regarding the scope of future debt collection as applied to time barred-fees, Reyes claims otherwise fail.

### E. Claims against Manchester (Count I)

Finally, pursuant to the Maryland Contract Lien Act ("MCLA"), Reyes challenges whether Manchester has "probable cause" to establish a lien on her property. ECF No. 16 at 27; Md Code Ann., Real. Prop. § 14-203(c)(1). Manchester has moved to dismiss the claims against it (Count I). ECF No. 22-1.

Under the MCLA, a party who wishes to contest the establishment of a lien must file a complaint in circuit court within thirty days after receiving notice of the creditor's intent to file a lien. *See Fontell*, 870 F. Supp. 2d at 408 (discussing § 14-203(c)(1)). If the debtor files a valid complaint in accordance with the MCLA, then the burden shifts to the creditor to show that probable cause supports the establishment of a lien and for a specified amount. Md. Code Ann., Real Prop. § 14-203(c)(2).

Reyes filed her complaint in circuit court on June 26, 2019 (ECF No. 1-1), twenty days

after the postmarked date of L&B's letter.  ECF No. 16-1; Md. Code. Ann., Real Prop. § 14-203(c)(1) (thirty-day window from date of receipt).  Moreover, consistent with § 14-203(c)(1), Reyes identified the involved parties and included copies of the notices sent by L&B and LEB, and two affidavits containing a statement of facts.  ECF No. 1-1; ECF 1-9 at 41–63.

Further, even if Reyes' challenge were meritless, the Court finds dismissal at this stage premature.  Under the MCLA, once a debtor timely files a valid complaint, the debtor is entitled to a hearing, if one is requested, to determine whether probable cause exists.  Md. Code. Ann., Real Prop. § 14-203(g)(1).  More importantly, particularly where two parties separately notified Reyes in June 2019 and represented that two different amounts were owed, Reyes has raised valid concerns about the exact amount that can be subject to a lien under Maryland law.  *See* Md. Code Ann., Real Prop. § 14-203(b)(5) (requiring the notice to include the "amount of alleged damages").  Manchester's motion to dismiss is therefore denied.

### F.  Class Action Allegations

Reyes is offered as the named representative party for seven putative classes.  ECF No. 16.  For defendants EJF, L&B, and LEB, Plaintiff identifies a putative class (to represent Maryland debtors asserting state law violations) and a subclass (the subgroup also bringing FDCPA claims).  *Id.*  Plaintiff has also put forward an additional class against LEB titled "LEB Moco Class" in connection with Plaintiff's claim that LEB collected consumer debts on behalf of community associations not registered with the Montgomery Commission on Common Ownership Communities ("MCCOC").  *Id.* ¶ 41.

As for her function as a class representative for claims otherwise dismissed against her individually, Reyes has offered no plausible theory of relief to support class claims apart from her insufficient allegations.  Thus, those claims fail as a matter of law regarding any putative

class in the same way they do against Reyes.  *See* Fed. R. Civ. P. 23(c)(1)(a);  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)); *Collins v. Village of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he can no longer be the class representative.  At that point, either another class representative must be found or the suit is kaput."); *see also Herron v. Mayor of Annapolis*, 388 F. Supp. 2d 565, 573 (D. Md. 2005), *aff'd*, 198 Fed. Appx. 301 (4th Cir. 2006); *Pelino v. Ward Mfg., LLC*, No. RDB–14–02771, 2015 WL 4528141, at *4 (D. Md. Jul. 27, 2015).  To the extent Reyes intended to bring class claims based on legal theories that survive these particular challenges, she has not successfully done so here.  *Cf. Rosedale v. CarChex, LLC*, No. SAG-19-2780, 2020 WL 998740, at *4–5 (D. Md. Mar. 2, 2020) (denying without prejudice motion to certify "grossly overbroad" class).

As to the viable claims pertinent to Reyes, the Court notes them to be fact-specific to her particularly tortured debt dispute with Manchester.  In particular, the gravamen of Reyes' remaining claims is that (1) EJF engaged in unlicensed debt collection activity; and that (2) both L&B and LEB erroneously included time-barred fees in amounts for which they threatened to file a statement of lien.  Nothing as pleaded suggests, however, that these errors arose from defendants' implementing a common system, scheme, plan, or broader approach to debtors capable of sustaining a class under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, the class claims are dismissed.

A final word on whether the claims dismissed are with or without prejudice.  When filing the Second Amended Complaint, Reyes had the benefit of Defendants' initial motions to dismiss, which were substantially similar to the motions challenging the Amended Complaint.  ECF No. 3 & 12.  Reyes, therefore, had ample opportunity to correct the deficiencies in the pleading, if

possible.  She did not.  The Court sees no reason to allow further amendment at this time.  The claims dismissed are with prejudice.  In the unlikely event that discovery allows Reyes to resurrect any of the claims, she may seek *for good cause shown* further amendment of the complaint.

### VI.     Conclusion

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are denied as moot (ECF No. 3 & 12); Manchester's motion to dismiss the Second Amended Complaint is denied (ECF No. 22); the remaining motions to dismiss the Second Amended Complaint are granted in part and denied in part (ECF Nos. 20, 26, 42); the motions to strike the Amended Complaint are denied (ECF Nos. 24, 29, 41); the motion to withdraw as Manchester's attorney is granted (ECF No. 43); and Plaintiff's motion for leave to file supplemental briefing is denied (ECF No. 51). A separate Order follows.

 7/7/2020                                                                 /S/                                          
Date                                                          Paula Xinis
                                                              United States District Judge